E. W. Larson et al., Trading as Larson Bros. Sand and Gravel Company, Appellants, v. Material Service Corporation, Appellee.

Gen. No. 10,070.

Opinion filed April 18, 1947. Rehearing denied June 23, 1947. Released for publication June 23, 1947.

WILLIAM D. KNIGHT, of Rockford, for appellants.

D'ANCONA, PFLAUM, WYATT, MARWICK & RISKIND, of Chicago, and THOMAS W. GILL, of Rockford, for appellee; MILTON M. HERMANN, of Chicago, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.

The Board of Education of the City of Rockford entered into a contract with Charles B. Johnson & Son, Inc., for the construction of the West Side High School. Thereafter, on February 14, 1939, the Johnson company entered into a written contract with appellee, Material Service Corporation, by which the latter was to furnish substantially all the materials required for the project. On the same day the Johnson company wrote the Material Service Corporation: "Confirming our conversation with you, it is necessary that all concrete materials be obtained from such sources as will permit their being worked on by our Union men on the job."

Thereafter, on February 27, 1939, after some preliminary conversations between Frank Larson, one of the appellants, and Sidney J. Marks, sales manager for appellee, a contract was entered into between ap-

pellants and appellee, whereby appellants were to furnish "the entire requirements of sand and gravel of the Charles B. Johnson Company on their project known as the West Side High School at Rockford, Illinois." The contract was in the form of a letter, signed on appellee's behalf by Sidney J. Marks, and accepted on behalf of appellants by Frank Larson. It provided: "This Sand and Gravel is to meet the specifications and requirements of the contractor, project and architect. This material will be delivered to the job site by truck not batched or in truck compartments, as required during the life of the job, and will be invoiced to us as follows: The gravel at $1.15 per cubic yard, less 3% and the torpedo-sand at $1.15 per cubic yard, less 3%."

Appellants operate a sand and gravel pit and there is no claim that the material did not conform strictly to the specifications. Appellants and their employees at the pit did not belong to any union. Appellants had arranged with Martin Palmquist, an independent contractor, to haul the sand and gravel from the pit to the West Side High School project. Palmquist and his drivers were all members of the union at that time. After the agreement was made, Mr. Lundstrom, superintendent of the Johnson company, visited appellants' plant, made an appraisal of their equipment and the amount of material on hand, and examined the quality of the sand and gravel, which had also been tested by the Pittsburgh Testing Laboratory in Chicago. Thereafter, on the written order of appellee, by letter dated March 22, 1939, one load each of sand and gravel was sent to the West Side High School, and about the same time, at Mr. Lundstrom's request, appellants sent a truck to the project so the ramp to the mixer could be properly lined up to fit the trucks. On the next day appellants sent two loads of material to the project, but Mr. Lundstrom declined to accept it. Mr. Larson testified that Mr. Lundstrom said that all the

union men except the carpenters had been pulled off the job, and that he told Larson he would let him know when he wanted more material. On March 27, 1939, appellee wrote appellants enclosing a copy of the letter from the Johnson company first above mentioned, and stated that ''since your material does not meet this requirement of the contractor, it is, therefore, not in accordance with paragraph 2 of our contract with you. We, therefore, are making arrangements to supply this material from another source, and any additional cost incurred by us will be charged to you.''

Appellants procured an injunction against the Unions restraining them from interfering with the delivery of the sand and gravel, and on March 30, 1939, sent a copy thereof to appellee by registered mail, together with a letter stating: ''We remind you again that we have a contract with you to furnish the sand and gravel for the West Side High School project. We are able, ready and willing to furnish this material in accordance with the contract. We expect to carry out our part of the contract and we expect you to do the same. Please advise us when more material will be required for the project in accordance with our contract with you.'' On April 3, appellee replied in a similar vein to their letter of March 27 and purchased the material from another source at an advance of approximately ten cents per ton. Appellants thereafter began this suit against appellee in the circuit court of Winnebago county to recover damages on account of an alleged breach of contract. Appellee filed an answer and counterclaim. The cause was heard by the court without a jury resulting in a judgment against appellants on their claim, and against appellee on its counterclaim. The cause is here on appeal by the Larsons, and a cross-appeal by Material Service Corporation.

Mr. Marks, sales manager for appellee, testified that prior to the signing of the agreement of

March 27, the matter of union labor was talked over between him and Frank Larson, and that the latter agreed the material to be furnished by appellants had to be such as could be handled by union labor on the job. Appellee does not claim to have disclosed to appellants the letter of February 14, 1939, from the Johnson company to appellee, and Frank Larson testified there were no talks whatever on that subject between him and Mr. Marks before the contract was signed. It is elementary that whatever talks may have been had, if any, concerning the subject, prior to March 27, 1939, were merged in the contract of that date.

R. A. Carter, superintendent of highways for 29 years, testified the word "specifications" in a sand and gravel contract refers to the gradation of the gravel as to size and cleanliness; that when in a contract or bid the word "requirements" is used, there is a meaning recognized in the architectural and engineering profession as to the meaning of the word; that it is recognized as meaning the amount of material required for the job that the producer is required to furnish, and it refers only to the amount of the material required; that the word "specifications" refers to the grade of the material and the word "requirements" refers to the amount of the material. There is nothing in the record that tends to contradict his testimony, and the first quoted sentence of the contract definitely uses the words "entire requirements" in this sense. Appellee's contention that the material did not meet the requirements of the contractor as set out in the contract is wholly without merit.

The claim of appellee that appellants failed to establish any basis for calculating damages is also without foundation. Frank Larson's testimony showed the cost per yard of producing the material and the cost per yard of hauling it, with the approximate profit per yard. The testimony shows that about

14,095 yards were used on the project, and the damages were a simple matter of computation. The trial court was in error in finding against appellants on their claim, and should have awarded them a judgment commensurate with the evidence. This situation, of course, disposes of any counterclaim by the appellee.

The judgment of the circuit court is reversed and the cause is remanded with directions to render judgment for appellants and proceed in accord with the views herein expressed.

*Reversed and remanded with directions.*